Good morning, Your Honor. May it please the Court, Ruben Sarkissian for the appellant. As the Court may be aware, the crux of the issue here is an agency's interpretation of its own implementing regulations. The appellant is a native of the former Soviet Union, a Ph.D. and researcher in theoretical physics. Among other places, he is a researcher at Caltech. The appellant was denied recognition as a person of extraordinary ability by the Citizenship and Immigration Services. Could I ask you just a few questions about that? Because that's the core of your case. Yes, Judge. You argue that he met the participation as a judge criterion. Was he just reviewing the diploma works of fellow students at his own university? How does that qualify? Your Honor, he was also reviewing works and publications submitted by fellow scientists at that university. And, Your Honor, as the Court is aware, that is nearly one of the various criteria. He needs to qualify he needs to he needs to qualify with three of the criteria in the category of in the category containing ten. And you also argued that he made conference presentations and that it met the display criterion. But doesn't the plain language of the regulation limit this to artistic type exhibitions? Your Honor, we believe it includes the scientific symposiums. At least that is that has been our position. And his publications have been presented at various scientific symposiums. Do you have any case authority for that? Your Honor, I in terms of in terms of the symposiums being constituting. Yes. No, Your Honor. This is a relatively unexplored area. However, if I may, Your Honor, I would I would like to bring to the court's attention a decision by this court going back nearly four days on the issue of agency interpretation of its own agency's overly restrictive interpretation of its own implementing regulations in this court's decision of just last Friday in Love Korean Church v. Chertoff. I believe the court would find your decision there of some assistance in resolving this matter. Did you subject that case to the court? No, Your Honor. Would you do that? Yes, Your Honor. Happily. It was just published last Friday, the 5th of December. Thank you. Thank you, Judge. Well, all you have to do is just let us know. You know, just send a little letter to the clerk. Yes, Your Honor. You know, hand deliver it. You're not too far away. No, Your Honor. Happily. You could e-mail it. I guess we have e-mail or fax it. Yes, Your Honor. And then call it to our attention. Yes, Your Honor. As I stated, this decision was published nearly Friday, Your Honor. Well, you know, we move fast around here. Yes, Judge. Yes. And, Your Honors, the appellant would submit the value of love Korean church to this decision is that like the case here, strictly with the agency's implementation, excuse me, the agency's interpretation of their own implementation of regulations to enable the statute. And I believe that's worthy of consideration in resolving this matter. And if I may, Your Honors, the court may glean some legislative intent if respecting this piece of legislation in taking judicial notice of a piece of legislation that came out more or less simultaneously or rather in the early 90s known as the Soviet Scientist Immigration Act. There the Congress stated its intention of not letting people of this caliber either be available on the marketplace for the highest bidder or for this country to be deprived of this level of talent and ability. If I may, again, if the court could please take judicial notice of that legislation, I think it will put the intent of Congress with respect to the concept of extraordinary ability in perspective. But does your client fit within that legislation?  He is a native of the former Soviet Union, a citizen of Armenia, and his field, as a physicist, we believe he would have been the kind of scientist contemplated by this other piece of legislation. But the legislative history talks about Pulitzer Prize winners, Nobel Prize winners, people of that ilk of, quote, extraordinary ability. Your Honor, that would certainly be the simpler, simpler, that would certainly be the easier decisions for the agency to make. This is where they have to, I believe, at least with respect to their own implementing regulations. I believe they have been too restrictive. Presumably any board can find a Nobel Prize winner to be a person of extraordinary ability. This requires a bit more examination. Okay. Why don't we hear what from the United States of America. Good morning, Your Honors. May it please the Court, my name is Elizabeth Stevens, and I represent the government of the United States in this immigration benefit case. Specifically, the appellant appeals the decision of the district court affirming or finding substantial evidence supportive of the United States Citizenship and Immigration Services denying of Mr. Kazarian's self-petition for status as an alien of extraordinary ability as a theoretical physicist. The key to the whole employment first preference is the extraordinary ability in the field of endeavor that they've chosen. Let me just ask you something. We have a letter here signed by Kip S. Thorne, who is the Feynman Professor of Theoretical Physics at Caltech. Now, that letter is dated 24 May 2005, so that's a few years back. But he writes, I thought, a very complimentary letter of this young man, and he supports his application for permanent residence in the United States. He says, I've written previously and thought he had already been granted well-deserved permanent residency, so I was surprised when he told me he needed yet another letter. And then he goes on to say, I've read several of Dr. Kazarian's scientific publications and have listened in lecture and conferences for the past approximately five years. Dr. Kazarian has been participating in weekly meetings of my research group at Caltech, meetings in which we discuss with each other our current research. He's rarely missed a meeting during this period. I've had many conversations with him about scientific research that he has done, and over the past two years he's been working on a research project in collaboration with my own research group at Caltech. And he said, I've formed a good opinion of Dr. Kazarian's research. It is of a caliber that one would expect from a young professor at a strong research-oriented university in the United States. And it's signed by Kip S. Thorne, the Feynman Professor of Theoretical Physics at Caltech. Do you know who Feynman was? Feynman? I'm sorry, I didn't study physics. He was a great physicist, Nobel Prize winner. So here's Kip Thorne. He's the Feynman Professor of Theoretical Physics. And I mean, here is a young man who is a theoretical physicist. He gets a nice letter from one of the great physicists of our country, theoretical physicist. And it seems to me that we've got to be crazy to want to send him back to Yerevan. Why would we want to do something like that? The USCIS is not judging Mr. Kazarian as somebody who would be good to have here in the United States working here. Why not? Well, that might be something that Mr. Kazarian could... We want to send him back over there to Yerevan, and then the Russians get a hold of him, or the Armenians over there get a hold of him, or whatever. And then he's working on their projects. Your Honor, the question is really... You've been saying to me... The question is really whether he has established extraordinary ability in his field such that he is one of the very top of the field. Where does it say that? In the statute. In the statute? Yeah. Where does it say in the statute? That's not specifically in the statute, Your Honor. Well, it doesn't say you've got to be a Nobel Prize winner, you have to be Einstein to come here. Actually, the legislative history of the statute says that this is exactly the type of Nobel Prize winners or similar types of things. That's some example that some congressman put in there, you know. Your Honor, Mr. Kazarian chose to apply under the first preference category, which requires this extremely high extraordinary ability standard. If Mr. Kazarian had applied under the second preference standard, which is a lower standard, he may well have been eligible. And the United States USCIS may well have approved a petition under that. I can't say that they will, because I can't speak for them. But he himself chose to try to pigeonhole his various accomplishments. We don't know whether he chose it or his lawyer chose it.  Your Honor, he chose to try to get under the first preference, to come in under the first preference category. This is a very restrictive category looking for extraordinary ability. Let me read you what the statute says. The alien has extraordinary ability, sciences, arts, education, business or athletics, which has been demonstrated by sustained national or international acclaim, and whose achievements have been recognized in the field through extensive documentation. That's the statute that we're talking about, is that right? Yes, Your Honor. All right. Where is he now? I mean, suppose he would miss on his extraordinary ability status that he's trying to get. Can he then apply for the next down for what is an exceptional as opposed to extraordinary? The EB-2 is exceptional, yes, Your Honor. The denial of a first preference petition has no bearing or limitation on any application under the second preference. He has to have an employer under the second. No, he can apply for a national interest waiver on a second preference. There is a national interest waiver category. If his research or work in the field is shown to be of interest into the United States, he can get a national interest waiver and does not need a labor certification or an employer. Again, you can self-petition in the second preference category. What do you think? Do you think this is a pretty good second section case? Well, I don't have the decision to defend or affirm. But you're with the Justice Department, right? Yes, Your Honor. Which is a public service organization, right? That's correct. I mean, we're all interested in the best interest of our country. So he seems, you know, he's working for this great physicist with a Feynman professorship of theoretical physics. If you were his lawyer, what would you tell him to do? Number one, the first thing I'd like to say is that if Mr. Thorne was applying for an immigrant visa under the first preference category, I would expect that the agency would approve a petition in the first preference category. That is the level of person that we're talking about for the first preference, somebody of the level of Mr. Thorne, somebody of the level of the chairman of the physics department in Yerevan who also wrote letters for him. Those are the levels of accomplishment, of publication, of having your references cited and approved by other people, not of a self-published textbook that hasn't really been accepted in any other. Let's assume we agree with you. Do we have or do you, are there any cases where we say, well, he doesn't meet the first preference, but he clearly meets the second preference? It says in the second preference, it says he will substantially benefit prospectively the national economy, cultural or educational interest. What is to prevent us or would we have to remand? What would be that if we felt that he met the second preference? Your Honor, he would have to, it's the government's position that he would have to apply and provide different documentation in a new petition for second preference category and let the agency decide whether or not he is qualified for second preference, for second preference as a second preference. What if we remanded to the agency to have them consider the second preference? Is there anything to prevent us from doing that? Your Honor, if your remand would be, basically, you would have to find that in order to remand on the, in the area of the second preference, in the area of this appeal, you would have to find that the agency abused its discretion in finding that he did not meet the first preference category. That's the only thing that's at issue here, not whether he meets any other category or whatever. It's whether or not he meets the category of employment first preference. And I understand. My question, do you find that he meets the category, the second preference? Is there anything to prevent us from saying the basis of this record, we find he meets the second preference, we there remand for further consideration? Your Honor, that's contrary to the spirit and whatever of the laws at issue. In counsel brought up Love Korean Baptist Church. That's a pretty good idea, isn't it? Counsel brought up Love Korean Baptist Church, Your Honor, and in Love Korean Baptist Church, the court did not actually find that Love Korean Baptist Church was eligible for religious preference petition. Rather, it remanded, under the spirit of Inez de Ventura, to have the agency itself determine whether or not that person, the petition should be revoked. Under the new, slightly, the new interpretation that the Ninth Circuit panel put on the religious worker regulations. Here, the issue is first preference. It's not second preference. The court should not take on its, take on the duties and whatever of the, of the agency to make the decision in the first place. If Mr. Kazarian would choose to, would choose to file a second preference petition, that is, again, reviewed by the agency de novo. And... From filing the petition. I do not know, Your Honor. I would be happy to look into that and present that in a, in a letter to the court. All right. Thank you, Your Honor. Thank you, Your Honor. And some of the same considerations came out there as we have here. We have a young person who of considerable talent that we didn't think we wanted to send back to the Khomeini. And I remember we, and this is all coming back to me now, we worked something out for him. And I think the government helped us on it, but I'll have to find that case. I have looked at the applicant, Mr. Kazarian's application for adjustment of status that's contained within the record, pages two, the excerpts of record, pages 203 and 204. It does indicate that Mr. Kazarian entered on a visitor visa, a B-2 visa, I believe. And he is not eligible for 245i status, which would, those are the only things that I can say. Generally, a B-2 visa is not going to be valid. This was entrance in 2005. So it is a question of whether he would, there is a question of whether he is still eligible for adjustment status if this application, if this petition is denied. However, while the petition is pending, there are generally, it's considered there's a bridge. But I would have to get the agency's final determination on that. And just to close up, thank you very much for the extra time. The government requests that you affirm the decision of the district court, finding that USCIS did not abuse its discretion in denying Mr. Kazarian's self-petition for first preference status. Thank you very much. You know, I'll say this, you've been very helpful and very kind, and it's been a pleasure to have you here. Thank you. Seriously. And I appreciate, yeah. You got some time, you know. Yeah. But why didn't you file for the second category? Your Honor, two issues. One, I was not, I personally was not the appellant's attorney at that time. Who was his attorney then? I don't know. I do not know, Your Honor. That was many years ago, Your Honor. However, to respond to Justice Nelson and Justice Thompson's questions regarding Judge Nelson, as they say, there ain't no justice at the Ninth Circuit. We are judges. The appellant is time barred for applying under the second preference, simply because while his matter was pending under the first preference application, his tourist visa and any extension thereof expired. He is not able to apply under any other category. I wish he could, because certainly after I became involved with him, I would have attempted something else. So at this point, the category of extraordinary ability is it. It's all or nothing as far as I'm able to understand. But you don't know who his lawyer was? Your Honor, as I'm thinking back, I believe it was a gentleman by the name of George Verdeen, who may have even been disciplined. Yeah, yeah, that's what I'm figuring now. Here, the government's helping you out. Thank you very much. Well, government counsel is showing me the name of the attorney who took over subsequently. But as far as my recollection goes, the attorney who government counsel showed me is not the person who initially set the appellant in the course of the extraordinary ability. What was his name? Verdeen, V-E-R-D-I-E-N, George being the first name. And I think he was a member of the Hawaii Bar when he was allowed to practice. And you think he's been disciplined? I believe so, Your Honor. I believe so. I'm sorry he didn't come to me right away, but that's who he is. Thank you. What's the name of this other lawyer? The second lawyer has an identical surname to the appellant. The second lawyer who, as far as I'm aware, did the best he could is Eric Kazarian. Yes, Your Honor. Thank you very much. All right. We'll take the next matter. Top Set International versus Donald Neufeld. Thank you.
judges: Pregerson, Nelson, Thompson